UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Freddie Harris,

                                                Plaintiff,

                                                                        **Hon. Hugh B. Scott**

                                                                        03CV861
                                v.                                      Consent

                                                                        **Decision
                                                                        &
Superintendent Poole, et al.,                                           Order**

                                                Defendants.

_____

        Before the Court is the defendants' motion for judgement  (Docket No.  49) and the

plaintiff's motion for summary judgment (Docket Nos. 57, 58 and 59). [1]


                                **Background**

        Plaintiff, Freddie Harris ("Harris") brings this action under 42 U.S.C. §1983 claiming that

his Eighth Amendment rights were violated.  In his Amended Complaint (Docket No. 28), the

plaintiff asserted Corrections Officer Bouvia and Mark Mogavero violated his constitutional right

to be free from cruel and unusual punishment for failing to protect him from another inmate on

July 7, 2003. (Docket No. 28).[2]

_____

        [1]  Also pending before the Court is the plaintiff's motion in limine (Docket No. 46).

        [2]  The Amended Complaint in this matter also alleged claims against Superintendent Poole
and Officer Bushlaw.  (Docket No. 28).  However, these claims were dismissed (Docket No. 34)
upon the plaintiff's own motion (Docket No. 32).  Thus, the only remaining claims are the Eighth
Amendment claims asserted against defendants Bouvia and Mogavero.

                                1

The plaintiff's claims in this case stem from an altercation between Harris and another inmate, referred to in the papers as "Elliott".   It appears that both Harris and Elliott worked as barbers at the Five Points Correctional Facility ("Five Points").   On July 7, 2003, both Harris and Elliott were assigned to the 10 Building barbershop.  Harris alleges that he asked Bouvia to investigate why both inmates would be assigned to the same barbershop. (Docket No. 28 at page 10).  The plaintiff asserts that Bouvia *only pretended* to call Mogavero to inquire into the double assignment.  Harris asserts that Bouvia watched he and Elliott fight on a video and failed to protect him from Elliott. (Docket No. 28 at page 11-12).  The only allegation asserted against Mogavero is that he allegedly conspired with Officer Gushlaw (who is no longer a defendant in this case) to confuse the assignments.  (Docket No. 28 at pages 9 and 13).

The plaintiff and the defendants have moved for summary judgment.


## Discussion


## Standard of Review

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.  See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant  v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The court must draw all reasonable inferences in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. See Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir.1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to

the court the existence of a genuine issue of material fact." <u>Lendino v. Trans Union Credit</u>

<u>Information</u>, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 324 (1986).  A fact is material:

> when its resolution would "affect the outcome of the suit under the
> governing law" and a dispute about a material fact is genuine "if
> the evidence is such that a reasonable jury could return a verdict
> for the non-moving party."

<u>General Electric Company v.  New York State Department of Labor</u>, 936 F.2d 1448, 1452 (2nd

Cir. 1991), quoting <u>Anderson v.  Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986).  While the

moving party must demonstrate the absence of any genuine factual dispute, (<u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986)), the party against whom summary judgment is sought,

however, "must do more than simply show that there is some metaphysical doubt as to the

material facts... . [T]he nonmoving party must come forward with specific facts showing that

there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S.

574, 586-87(1986); <u>McCarthy v. American Intern. Group, Inc.</u>, 283 F.3d 121 (2d Cir. 2002);

<u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir.2002).  "The non-moving party must

come forward with enough evidence to support a jury verdict ... and the ... motion will not be

defeated merely ... on the basis of conjecture or surmise." <u>Trans Sport</u>, supra, 964 F.2d at 188,

quoting <u>Bryant v.  Maffucci</u>, supra.  If undisputed material facts are properly placed before the

court by the moving party, those facts will be deemed admitted, unless they are properly

controverted by the nonmoving party." <u>Glazer v. Formica Corp.</u>, 964 F.2d 149, 154 (2nd Cir.

1992), citing <u>Dusanenko v. Maloney</u>, 726 F.2d 82 (2nd Cir. 1984).  The Court's responsibility in

addressing a summary judgment motion is identifying factual issues, not resolving them.  See

<u>Burger King Corp. v. Horn & Hardart Co.</u>, 893 F.2d 525, 528 (2nd Cir. 1990). However,

summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Eighth Amendment Claims**

It is settled that, under the Eighth Amendment, "prison officials have a duty ⋯ to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.1988)). In _Farmer_, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. Id. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; Hines v. Lacy, 189 F.3d 460 (2d Cir.1999).

It is equally well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). Plaintiff must allege a "tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

4

Finally, a plaintiff asserting an Eighth Amendment claim must demonstrate that he or she

suffered a serious injury due to the deliberate indifference of the prison officials. Farmer, 511

U.S. at 834; Johnson v. Abate, 2000 WL 1919913 (E.D.N.Y. 2000); Cruz v. Hillman, 2002 WL

31045864 (S.D.N.Y. 2002).

In the instant case, the plaintiff has submitted video tapes of the incident underlying the

claims in this matter. (Docket No. 54). The video tapes reflect the following: At approximately

3:51 p.m., Harris and Elliott entered the barbershop room; about one minute later Bouvia entered

the room, spoke with the two inmates and took some paperwork from each and then existed the

room. For the next several minutes, Harris and Elliott appeared to engage in discussion.

Although some voices are audible on the tape, the sound appears to come from outside of the

room and the video does not appear to capture the audio of the conversation between Harris and

Elliott.[3]  In any event, the discussion does not appear to be heated or violent.  Indeed, one of the

inmates leaned calmly against the cabinet with his arms crossed through-out the discussion.  At

3:56:30, Harris and Elliott suddenly broke into a fight.  Harris alleges that Elliott "secretly"

punched him. (Docket No. 28 at page 11).  The video tape reflects that the two exchanged wild

swings for a few seconds.  Elliott appears to have snapped off the goose-neck of the sink faucet

and struck Harris with it.  Harris quickly took the hollow tubing away from Elliott, briefly used it

to strike Elliott and, just as quickly, discarded the faucet. The two men then grasped each other in

respective bear hugs where they remained for a minute or so, until at 3:58:13, when various

---

[3]   The audio, which is almost inaudible, reflects several voices and noises emanating from
outside the barbershop. The voices appear to be conversation of various persons other than Harris
and Elliott.

correctional officers came into the room and broke up the fight.[4]  The entire fight lasted less than

two minutes.  Neither inmate appeared injured. The plaintiff does not allege that he suffered any

serious injury during the incident (indeed, although Harris alleges that he was "attacked" he does

not allege any specific physical injury from the attack).

The plaintiff has failed to set forth any basis to support his contention that either Bouvia

or Mogavero were deliberately indifferent to a serious risk of harm to the plaintiff.  The plaintiff

has not presented any evidence or articulated any basis from which a trier of fact could conclude

that Bouvia or Mogavero could have known that Elliott would attack Harris in the barbershop.

Harris does not allege that he had a previous history of confrontation with Elliott, or that Elliott

has a record of extremely violent conduct at Five Points.  Thus, the plaintiff has not demonstrated

that a question of fact exists as to whether either Bouvia or Elliott knew of and disregarded an

excessive risk to the plaintiff's health or safety. Farmer, 511 U.S. at 837; Hines v. Lacy, 189 F.3d

460 (2d Cir.1999).

Harris also appears to allege that Bouvia did not intervene quickly enough when the fight

started.  The plaintiff has presented nothing but his own allegations to the effect that Bouvia

watched the fight happen on video before intervening.  While engaged in the fight with Elliott,

the plaintiff was not in a position to observe Bouvia.  Bouvia alleges that after he took the

---

[4]  Although a short burst of clapping can be heard on the video tape seconds before the time
the officers entered the room to break up the fight, the source of the clapping can not be determined.
Inasmuch as many of the sounds on the tape appear to be unrelated to the events transpiring in the
barbershop, a question exists as to whether the clapping referred to the events between Harris and
Elliott. The plaintiff has not presented any evidence or articulated any basis from which a trier of fact
could conclude that Bouvia was the source of the clapping. Indeed, the video reflects that Bouvia
entered the room to break up the fight just seconds after the clapping was heard on the tape and
appears to have been on his way to the barbershop when the clapping occurred.

program cards from the inmates, he went downstairs to the First Officer's desk to inquire about

the double assignment.  He alleges that he heard water running and a thumping noise coming

from the vicinity of the barbershop and immediately went upstairs, with Corrections Officer

Cirbus, to investigate. (Docket No. 51 at ¶¶ 12-13). The plaintiff has not presented any evidence

or articulated any basis to refute Bouvia's testimony in this regard.  The plaintiff has also failed

to articulate what evidence he could present to a trier of fact from which a conclusion could be

drawn that Bouvia watched the incident on a monitor and failed to intervene in the fight thereby

subjecting Harris to an excessive risk of injury.  As noted above, the video tape does not reflect

that Harris and Elliott were engaged in a heated argument prior to the outbreak of the fight.

Instead, the video reflects that the fight erupted suddenly.  Moreover, the video reflects that the

"active" part of the fight lasted only a few seconds and the entire incident was over in less than

two minutes.  Thus, the Court finds as a matter of law, that the circumstances in this case are

distinguished from those cases in which a correctional officer "stood by" and permitted an attack

on an inmate to occur.  In any event, the plaintiff has failed to present evidence establishing a

question of fact as to whether Bouvia knew of and disregarded an excessive risk to the plaintiff's

health or safety in this regard. Farmer,  511 U.S. at 837; Hines v. Lacy, 189 F.3d 460 (2d

Cir.1999).


**Conclusion**

Based on the above, the defendants' motion for summary judgment is granted in its

entirety and the plaintiff's motion for summary judgment is denied.  The remaining trial motions

are denied as moot.  The Clerk of the Court is directed to enter judgment in favor of the

defendants.

So Ordered.


                                            /s/  Hugh B. Scott
                                        United States Magistrate Judge
                                        Western District of New York

Buffalo, New York
November 15, 2006